**STATE of Missouri, Respondent,**

v.

**Bernard RHODES, Appellant.**

No. 80825.

Supreme Court of Missouri,
En Banc.

April 13, 1999.

Rehearing Denied May 11, 1999.

over her head. The screaming stopped. He then took Martin's car keys, a few of her belongings, and drove away in her car.

The autopsy revealed that Martin had black eyes, lacerations on her lips and above her eyes, a broken nose, bruises on her shoulders, contusions on her elbows, marked hemorrhaging under the skin of her head, a broken rib, and a broken neck. Despite these injuries, the cause of death, according to medical testimony, was asphyxiation from the multicolored plastic bag tied over her head.

Janet M. Thompson, Asst. Public Defender, Columbia, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Daniel W. Follett, Asst. Atty. Gen., Jefferson City, for Respondent.

DUANE BENTON, Chief Justice.

A jury convicted Bernard Rhodes of first degree murder and first degree robbery. The jury recommended and the circuit court imposed the punishment of death for the murder, and life imprisonment for the robbery. This Court has jurisdiction over the appeal. *Mo. Const. art. V, sec. 3.* The sentence of death is reversed, and the case is remanded. In all other respects, the judgment is affirmed.

## I.

This Court reviews the facts in the light most favorable to the verdict. *State v. Storey,* 901 S.W.2d 886, 891 (Mo. banc 1995).

Appellant stated in his confession that, on July 16, 1997, he entered the home of Dorothy Martin, age 81, looking for something to steal. After Martin spotted appellant, he knocked her down and she stopped moving. As appellant searched for valuables, he observed Martin trying to get up. He bound her arms and legs, again searched for valuables, but was interrupted by Martin's screams for help. Appellant wrapped a green cloth around her head and resumed his search. After still hearing her screams through the cloth, he placed a plastic bag

## II.

Appellant asserts that the trial court committed several errors during the guilt phase.

### A. Admission of Photographs

Appellant first argues that the trial court abused its discretion by admitting exhibits 49 A–C, photographs of Dorothy Martin's autopsy. "Photographs, although gruesome, may be admitted where they show the nature and location of wounds, where they enable the jury to better understand the testimony, and where they aid in establishing any element of the State's case." *State v. Feltrop,* 803 S.W.2d 1, 10 (Mo. banc 1991) (citations omitted), *cert. denied,* 501 U.S. 1262, 111 S.Ct. 2918, 115 L.Ed.2d 1081 (1991).

The photographs in question show the inside of Martin's scalp after the skin was peeled back to reveal injuries to Martin's head. The photographs helped the jury understand the extent of Martin's interior hemorrhaging, which otherwise was obscured by Martin's hair. Because they depict the nature and location of wounds, admitting the photographs into evidence was not an abuse of discretion. *Id.*

### B. Voluntary Intoxication Evidence and Instruction

Appellant contends that the trial court erred when it sustained the State's objection to testimony of William Rogers that he used drugs with appellant prior to the murder.

Testimony about intoxication may be relevant and admissible on issues of conduct. *Sec. 562.076.3.*[1] However, testimony that a party was not intoxicated during any relevant time is irrelevant and immaterial. *See Sampson v. Missouri Pacific Railroad Co.,* 560 S.W.2d 573, 587[21] (Mo. banc 1978). Rogers would have testified that, in the weeks before the murder, he and appellant often used crack cocaine together—the last time being between one and three days before Martin's death. Appellant's expert testified that the crack user is intoxicated for 15 to 30 minutes after ingestion, and "crashes" until 24 hours after ingestion. Therefore, Rogers would not have testified that appellant was intoxicated during any of the events in question. This testimony was not relevant or material to appellant's case.

In any event, testimony of voluntary intoxication is not admissible to negate the mental state of an offense. *State v. Roberts,* 948 S.W.2d 577, 588[6] (Mo. banc 1997) (citing *sec. 562. 076. 3), cert. denied,* —— U.S. ——, 118 S.Ct. 711, 139 L.Ed.2d 652 (1998). The exclusion of Rogers' testimony was not error.

Appellant asserts that the trial court erred in rejecting his proposed instruction on intoxication evidence:

> You may consider evidence that Bernard Rhodes was in a drugged condition to evaluate his conduct. You may not consider evidence that Bernard Rhodes was in a drugged condition when evaluating whether the state has met its burden of proving beyond a reasonable doubt mental states which are elements of the offense.

Appellant did not offer any evidence of intoxication relevant to his conduct. Appellant did offer evidence of intoxication relevant to his mental state, as demonstrated by the words of his argument: "The evidence that Bernard had been ingesting crack cocaine was thus relevant since, as Dr. Evans explained, the brain chemistry when an individual crashes from a crack high causes him to try to find more crack to alleviate the pain caused by the crash." Evidence of voluntary intoxication is not admissible to negate the mental state of the offense. *Roberts,* 948 S.W.2d at 588[6] (citing *sec. 562.076.3* ). Because no evidence of intoxication relevant to "conduct" was introduced, the court properly did not instruct the jury to consider such evidence. *Id.*

Evidence of appellant's cocaine addiction was admitted to show his motive to rob Martin: to buy more crack cocaine. The court properly limited the jury's consideration of this evidence with the following instruction: "a drugged condition from drugs will not relieve a person of responsibility for his conduct." This is an accurate statement of the law in Missouri. *Id.*

### C. Sufficiency of the Evidence

Appellant next asserts there was insufficient evidence to convict him of first degree murder.

A person commits the crime of murder in the first degree by knowingly causing the death of another person after deliberation. *Sec. 565.020.1.* This Court determines the sufficiency of the evidence by reviewing the record, and its reasonable inferences, in the light most favorable to the verdict while disregarding all contrary evidence and inferences. *State v. Johnston,* 957 S.W.2d 734, 747 (Mo. banc 1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 1171, 140 L.Ed.2d 181 (1998).

Appellant concedes in his brief that "Bernard killed Ms. Martin," but asserts the killing was without deliberation. Repeated blows to the victim are sufficient evidence to support a jury's determination of deliberation. *Id.* at 748[21]. Martin's autopsy revealed she had black eyes, lacerations on her lips and above her eyes, a broken nose, bruises on her shoulders, contusions on her elbows, marked hemorrhaging under the skin of Martin's head, a broken rib, and a broken bone in her neck that, according to medical testimony, paralyzed her from the neck down. This evidence of repeated blows sufficiently supports the jury's finding of deliberation.

Further, the jury could have found that deliberation occurred after appellant's first

---

1. All statutory citations are to RSMo 1994 unless otherwise indicated.

attack on Martin while he ransacked her home and returned to his victim three times: first to bind her arms and legs, second to wrap a green cloth around her head, and finally to place a multicolored plastic bag over her head and tie it tightly around her neck. *See State v. Antwine*, 743 S.W.2d 51, 72 (Mo. banc 1987), *cert. denied*, 486 U.S. 1017, 108 S.Ct. 1755, 100 L.Ed.2d 217 (1988) (holding evidence of deliberation sufficient when defendant had several opportunities to abandon his plan to kill the victim).

■ Appellant argues he did not deliberate on Martin's death because he was "in a frenzied condition from having crashed from the euphoria he had experienced while high on crack cocaine." Assuming the "crash phase" of chemical dependency is intoxication, this argument is not permitted in Missouri; voluntary intoxication may not negate a defendant's mental state or provide an insanity defense absent a separate mental disease that results in diminished capacity without the voluntarily ingested drugs. *Roberts*, 948 S.W.2d 577, 589[9]. To the extent appellant argues the "crash" phase of drug use is not intoxication, his necessity to consume more drugs in no way excuses the killing. *State v. Smith*, 884 S.W.2d 104, 105[3] (Mo.App.1994) (citing *sec. 563.026*).

The evidence of first degree murder was sufficient.

■ Appellant also asserts that there was insufficient evidence for the conviction of first degree robbery. "A person commits the crime of robbery in the first degree when he forcibly steals property and in the course thereof he, or another participant in the crime, (1) Causes serious physical injury to any person." *Sec. 569.020*.

Appellant entered Martin's home for the purpose of stealing her property. When spotted, he knocked Martin unconscious. In appellant's own words: "She just laid there. I didn't see her mouth bleeding till later. She quit moving." From the medical evidence, the jury could infer that the marked hemorrhaging under the skin of Martin's head was inflicted by appellant and caused Martin to lose consciousness. Such hemorrhaging rendering someone unconscious was sufficient evidence that appellant forcibly stole property and simultaneously caused serious physical injury.

Afterwards, appellant left in Martin's car with some of her possessions: "I then got keys and looked in garage & saw car. I got in car and I seen the weedeater. I got out & put it in car & I left." This was sufficient evidence that appellant stole Martin's property.

Finally, jurors could have reasonably inferred that appellant's physical abuse was "for the purpose of preventing resistance to the taking" of Martin's property, and was therefore "in the course" of the robbery. *State v. Weems*, 840 S.W.2d 222, 228[6] (Mo. banc 1992). There was sufficient evidence that appellant forcibly stole Martin's car and weedeater, and in the course thereof, caused serious injury to Martin.

Appellant maintains in his brief that the intent to steal was formed after Martin was seriously injured. This is belied by appellant's own words in his videotaped confession that show his intent to steal was formed before entering Martin's home: "I seen the door open. I thought I would go get me something. Anything worth something." In any event, it is enough that the violence to Martin was preceded by or contemporaneous with the taking. *Weems*, 840 S.W.2d at 228–29. Here, the evidence is clear that appellant seriously injured Martin, then stole her weedeater and left in her car. The evidence of first degree robbery was sufficient.

### III.

■ Appellant did not object to the State's closing argument in the guilt phase. He now asserts the trial court should have sua sponte stricken several comments by the prosecutor. Under Rule 30.20, this Court may decline, within its discretion, claims of plain error that do not facially establish substantial grounds for believing a manifest injustice or miscarriage of justice occurred. *State v. Brown*, 902 S.W.2d 278, 284 (Mo. banc 1995), *cert. denied*, 516 U.S. 1031, 116 S.Ct. 679, 133 L.Ed.2d 527 (1995). A court should rarely grant relief on assertions of plain error at guilt-phase closing because, absent an objection, the trial court's options

are limited to an invited interference with summation, which increases the risk of error. *State v. Storey,* 901 S.W.2d 886, 897 (Mo. banc 1995). Each comment is reviewed in turn.

■■■■ *First,* appellant argues the following comment by the prosecutor was unsworn testimony to facts outside the record:

> Ladies and gentleman of the jury, this case has moved quickly. You may have heard of cases, other cases tried elsewhere that take a lot longer. Don't let that bother you. This case is just that tight. It's just that good.

The prosecutor may state legitimate inferences from the evidence but may not imply a knowledge of facts not before the jury. *State v. Simmons,* 944 S.W.2d 165, 182[39] (Mo. banc 1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 376, 139 L.Ed.2d 293 (1997). Here, the trial took six days. Since appellant did not object, the prosecutor was permitted to infer that some jurors "may" have heard of longer cases. This claim of plain error does not rise to the level of manifest injustice.

■■■ *Second,* appellant contends the prosecutor improperly testified to facts outside the record with this statement: "once again, ladies and gentlemen, if there ever was a case of murder in the first degree, it's this one, and you know that." This was a rhetorical flourish, not plain error. *Storey,* 901 S.W.2d at 898[41].

■■■ *Third,* appellant asserts the prosecutor improperly attempted to define the concept of reasonable doubt: "This case is proven beyond a reasonable doubt. Now if you want to get into unreasonable doubt, that's another matter."

■■■ Arguments by prosecutors attempting to define reasonable doubt represent reversible error. *State v. Williams,* 659 S.W.2d 778, 782 (Mo. banc 1983). However, "brief remarks purporting to define 'reasonable doubt,' although improper, do not result in reversible error so long as counsel does not unduly dwell upon the definition." *Id.* at 782. Therefore, putting aside whether the prosecutor "defined" the concept of reasonable doubt with this comment, it was too

brief to merit reversal, let alone reversal for plain error.

■■■ *Fourth,* appellant argues the prosecutor improperly commented on appellant's post-*Miranda* silence (before his confession) in violation of *Doyle v. Ohio,* 426 U.S. 610, 619, 96 S.Ct. 2240, 2245, 49 L.Ed.2d 91 (1976), and *State v. Dexter,* 954 S.W.2d 332, 338 (Mo. banc 1997), with the following comment:

> And then he gets with the police and doesn't tell the truth until they finally got him in a position based on the evidence where he has to start talking. He doesn't want to get caught. And through his lawyers he's doing the same thing to you. He doesn't want you to catch him.

The prosecutor did not comment on appellant's silence but on his untruthful statements after receiving *Miranda* warnings. Such statements are admissible: "Such questioning makes no unfair use of silence because a defendant who voluntarily speaks after receiving *Miranda* warnings has not been induced to remain silent." *Anderson v. Charles,* 447 U.S. 404, 408, 100 S.Ct. 2180, 2182, 65 L.Ed.2d 222 (1980). No plain error is involved.

■■■ *Fifth,* appellant contends the State improperly personalized its argument with this comment:

> I admire – it's hard for me to take sometimes, I admit, the defense arguments. She's got to do her job for her client, ladies and gentlemen. But just because the defense gets up here and tells you something, just because the state's got the burden of proof in this case, it doesn't mean you got to believe and accept what they tell you.

Prosecutors may not express an opinion applying facts not available to the jury. *Grubbs v. State,* 760 S.W.2d 115, 119 (Mo. banc 1988), *cert. denied,* 490 U.S. 1085, 109 S.Ct. 2111, 104 L.Ed.2d 672 (1989). However, a prosecutor may state conclusions fairly drawn from the evidence, and inferences need not seem necessarily warranted. *Id.* It is also proper for the prosecutor to comment on the credibility of the defendant's case. *State v. Kreutzer,* 928 S.W.2d 854, 872[30]

(Mo. banc 1996), *cert. denied,* 519 U.S. 1083, 117 S.Ct. 752, 136 L.Ed.2d 689 (1997). Here, the prosecutor stated his conclusion that arguments by defense counsel were unpersuasive. This comment does not imply knowledge of facts not before the jury and is proper. No plain error occurred.

## IV.

■ Appellant asserts that, during sentencing, the State improperly personalized its argument for the death penalty:

Try, try just taking your wrists during deliberations and crossing them and lay down and see how that feels (demonstrating). Imagine your hands are tied up.

MS. SHAW (defense counsel): Your Honor, I'm going to object to the personalization.

THE COURT: The objection's overruled.

MR. CRANE (the prosecutor): And ladies and gentlemen, you're on the floor, and you're like that, with your hands behind your back, and this guy is beating you. Your is nose broken. Every time you take a breath, your broken rib hurts. And finally, after you're back over on your face, he comes over and he pulls your head back so hard it snaps your neck.

\* \* \*

Hold your breath. For as long as you can. Hold it for 30 seconds. Imagine it's your last one.

MS. SHAW: Your Honor, I'm going to object.

MR. CRANE: You can do that.

MS. SHAW: Improper to put the jury in the place of the victim. I think this is improper argument.

THE COURT: The objection is overruled.

While arguing in this manner, the prosecutor physically demonstrated how the victim was murdered.

■ Arguments for the death penalty designed to cause the jury to abandon reason in favor of passion are improper. *State v. Taylor,* 944 S.W.2d 925, 937 (Mo. banc 1997);

*State v. Richardson,* 923 S.W.2d 301, 323 (Mo. banc 1996), *cert. denied,* 519 U.S. 972, 117 S.Ct. 403, 136 L.Ed.2d 317 (1996). In each death penalty case, this Court reviews whether a sentence of death is imposed under the influence of "passion, prejudice, or any other arbitrary factor." *Taylor,* 944 S.W.2d at 937 (quoting *sec. 565.035.3(1)* ). Arguments likely to inflame and excite prejudices of the jury are not improper if they help the jury understand and appreciate evidence that is likely to cause an emotional response. *Johnston,* 957 S.W.2d at 754[47][48]. For example, the prosecutor may recount in detail the victim's pain and suffering, engendering sympathy in the jury during the penalty-phase closing argument. *See State v. Whitfield,* 837 S.W.2d 503, 511 (Mo. banc 1992). Nonetheless, inflammatory arguments are always improper if they do not in any way help the jury to make a reasoned and deliberate decision to impose the death penalty. *Taylor,* 944 S.W.2d at 937.

■ An argument is personalized only when it suggests a personal danger to the jury or their families. *State v. Copeland,* 928 S.W.2d 828, 842 (Mo. banc 1996), *cert. denied,* 519 U.S. 1126, 117 S.Ct. 981, 136 L.Ed.2d 864 (1997); *Kreutzer,* 928 S.W.2d at 872. Arguing for jurors to place themselves in the shoes of a party or victim is improper personalization that can "only arouse fear in the jury." *Storey,* 901 S.W.2d at 901; *Faught v. Washam,* 329 S.W.2d 588, 602[26] (Mo.1959); *State v. Roberts,* 838 S.W.2d 126, 131 (Mo. App.1992) ("Asking jurors to place themselves in the place of the victim is improper in and of itself."); *State v. Long,* 684 S.W.2d 361, 366 (Mo.App.1984); *Merritt v. Wilkerson,* 360 S.W.2d 283, 287–88 (Mo.App.1962); *F.W. Woolworth Co. v. Wilson,* 74 F.2d 439, 442[6] (5th Cir.1934); *State v. Blaine,* 427 N.W.2d 113, 115–16 (S.D.1988); *Henker v. Preybylowski,* 216 N.J.Super. 513, 524 A.2d 455, 459 (1987); *Russell v. Chicago, Rock Island & Pacific Railroad Co.,* 249 Iowa 664, 86 N.W.2d 843, 848 (1957); 75A AM JUR.2D *Trial* Sec. 650 (1998).

■ Such arguments standing alone do "not always constitute reversible error, particularly where the trial court has taken ef-

fective action" to correct them. *Faught*, 329 S.W.2d at 602[26]. However, they are "condemned and uniformly branded improper, the rationale of rejection being that a juror doing that would be no fairer judge of the case" than the party or victim herself. *Id.*

Here, while demonstrating, the prosecutor asked the jurors to imagine themselves in the place of the victim experiencing every detail of the crime. True, a similar improper argument may not require reversal, especially where there is no objection or there is a curative instruction. *See Devier v. Zant*, 3 F.3d 1445, 1451 (11th. Cir.1993) (holding that failure to object to prosecutor's demonstration during guilt-phase closing argument of murder case did not render trial fundamentally unfair); *Chandler v. State*, 689 S.W.2d 332, 335 (Tex.App.1985) (holding similar argument improper but cured by judge's instruction). Similar but less extensive arguments for the death penalty also do not require reversal. *People v. Haskett*, 30 Cal.3d 841, 180 Cal.Rptr. 640, 640 P.2d 776, 790 (1982) (holding less extensive remarks "insufficiently inflammatory" to merit reversal, though reversing for other improper argument); *State v. Johnson*, 324 N.W.2d 199, 202 (Minn.1982) (holding brief similar argument improper but insufficiently prejudicial for reversal).

Asking the jurors to put themselves in Dorothy Martin's place, "then graphically detailing the crime as if the jurors were the victims, could only arouse fear in the jury." *Storey*, 901 S.W.2d at 901. Such argument, unduly infecting the jury's decision with passion, was "grossly improper." *Id.* In this case, the prosecutor's inflammatory argument did not in any way assist the jury in making a reasoned and deliberate determination to impose the death penalty:

> Try, try just taking your wrists during deliberations and crossing them and lay down and see how that feels (demonstrating). Imagine your hands are tied up.... And ladies and gentlemen, you're on the floor, and you're like that, with your hands behind your back, and this guy is beating you. Your nose is broken. Every time you take a breath, your broken rib hurts. And finally, after you're back over on your face, he comes over and he pulls your head back so hard it snaps your neck.... Hold your breath. For as long as you can. Hold it for 30 seconds. Imagine it's your last one.

Trial court error, timely preserved, creates the presumption of prejudice. *Lester v. Sayles*, 850 S.W.2d 858, 864 (Mo. banc 1993). *See also Storey*, 901 S.W.2d at 901; *State v. Tiedt*, 357 Mo. 115, 206 S.W.2d 524, 529 (1947). Since appellant objected to this error both at trial and in his motion for new trial, and because the improper personalization denied appellant a fair trial on the issue of punishment, the sentence of death is reversed. *Rule 29.11; State v. Tokar*, 918 S.W.2d 753, 761[1] (Mo. banc 1996), *cert. denied*, 519 U.S. 933, 117 S.Ct. 307, 136 L.Ed.2d 224 (1996). Appellant's other arguments concerning the penalty phase need not be addressed.

## V.

The sentence of death is reversed, and the case is remanded. In all other respects, the judgment is affirmed.

All concur.