# United States Court of Appeals
## For the Eighth Circuit

_____

No. 17-2067
_____

Joseph Harden,

*Petitioner - Appellee*,

v.

Jeff Norman,

*Respondent - Appellant.*<sup>*</sup>*

_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: September 28, 2018
Filed: March 29, 2019

_____

Before COLLOTON, GRUENDER, and GRASZ, Circuit Judges.

_____

COLLOTON, Circuit Judge.

The State of Missouri appeals the district court's grant of habeas corpus relief to Joseph Harden. Harden was convicted at a bench trial in Missouri state court of first-degree murder, first-degree robbery, and two counts of armed criminal action.

---

<sup>*</sup>Warden Jeff Norman is automatically substituted for his predecessor under Federal Rule of Appellate Procedure 43(c)(2).

The court sentenced him to life in prison. The Missouri Court of Appeals affirmed Harden's convictions on direct review, rejecting his claims of insufficient evidence. After exhausting remedies in state court, Harden petitioned for a writ of habeas corpus in the district court under 28 U.S.C. § 2254. The district court granted relief on Harden's claim that there was insufficient evidence to support the conviction for first-degree robbery and the corresponding conviction for armed criminal action. The State appeals, and we conclude that the Missouri Court of Appeals did not unreasonably apply clearly established federal law as determined by the Supreme Court. We therefore reverse the order granting in part Harden's petition.

I.

The evidence at trial showed that on July 7, 2008, Harden picked up Danny Singletary in Dyersburg, Tennessee, and brought him to Al Harper's house in Paragould, Arkansas. Harper paid Harden seventy dollars for this favor. Singletary recalls Harden saying that he was "broke."

Later that night, the three men made their way back to Dyersburg. While they were driving through Hayti, Missouri, in the early morning hours, a police officer stopped the vehicle and arrested Singletary for driving while intoxicated. The officer released Harden and Harper.

Harden and Harper walked to a nearby automated teller machine, where Harper made withdrawals for $20 and $200 at 4:23 a.m. and 4:25 a.m., respectively. Surveillance video from the ATM shows Harper making the withdrawals in Harden's presence and giving Harden some of the cash.

Sometime between 5:30 and 6:00 a.m., a passing motorist saw two men outside Brown's Grocery, which is located about a mile from the ATM. One man was using a pay phone and the other man was sitting down. Harden acknowledged at trial that

-2-

he used a pay phone outside Brown's Grocery that morning to ask a friend to come and give a ride to him and Harper.

Between 7:00 and 7:30 a.m., two passing motorists saw a shirtless man walking along the highway near a farm shop that was 250 to 300 yards from Brown's Grocery. One of the motorists observed that the man was "coming out from" the farm shop. The other motorist, who owned the farm shop, observed inch-tall letters tattooed across the upper part of the man's back. Harden has his surname tattooed in large letters across his shoulders.

When the farm shop owner arrived at his business, he found Harper's body on the ground behind the shop. Police recovered a bloodied concrete block and knife in a field near the farm shop. Forensic testing showed that the blood on both items was consistent with Harper's DNA profile. Harper's body was left with a smashed face, a cut throat, and multiple stab wounds to the chest.

Police later recovered a t-shirt, hat, and blood-stained jeans that Harden had discarded at nearby locations that morning. DNA on the t-shirt and jeans was consistent with the DNA profiles of both Harden and Harper. DNA on the hat was consistent with Harper's profile.

Police also recovered Harper's wallet from a trash can in the parking lot of Brown's Grocery. The wallet contained a debit card but no cash. Harper had used the debit card to withdraw money at the ATM during the 4:00 a.m. hour.

Harden testified in his own defense at trial. He admitted that he was present when Harper made the two ATM withdrawals and that Harper gave him $75 at the ATM. Harden was drawing unemployment benefits of $140 to $150 per week; he possessed only $15 or $20 when he met Singletary and Harper the night before the murder. Harden denied robbing or killing Harper.

The state trial court found Harden guilty of first-degree murder, first-degree robbery, and two counts of armed criminal action based on his use of the concrete block to commit the murder and robbery. The court acquitted Harden of two counts of armed criminal action based on allegations that he used a knife.

The Missouri Court of Appeals affirmed Harden's convictions on direct review. *State v. Harden*, No. SD30479 (Mo. Ct. App. June 17, 2011). Harden petitioned for postconviction relief in the Missouri courts, claiming ineffective assistance of counsel. The postconviction court denied the motion and the Missouri Court of Appeals affirmed. *Harden v. State*, 415 S.W.3d 713, 715 (Mo. Ct. App. 2013).

Harden then petitioned for a writ of habeas corpus in the district court under 28 U.S.C. § 2254, claiming insufficient evidence to support his convictions and ineffective assistance of counsel. The district court denied relief as to the ineffective-assistance claims and the claim of insufficient evidence to support the first-degree murder conviction and corresponding armed criminal action conviction. But the court granted relief as to the first-degree robbery conviction and corresponding armed criminal action conviction. According to the district court, the State failed to present sufficient evidence that Harden used physical force against Harper "in the course of" stealing his wallet. The district court concluded that the decision of the Missouri Court of Appeals on this point was an unreasonable application of *Jackson v. Virginia*, 443 U.S. 307 (1979). The State appeals, and we review the district court's legal conclusions *de novo*. *Williams v. Roper*, 695 F.3d 825, 830 (8th Cir. 2012).

II.

Under the Antiterrorism and Effective Death Penalty Act of 1996, as applicable here, a petitioner seeking habeas relief must establish that the state court's adjudication of a claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the

Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). The "unreasonable application" inquiry asks whether the state court's application of clearly established federal law was "objectively unreasonable." *Williams v. Taylor*, 529 U.S. 362, 409 (2000). Harden contends that the Missouri Court of Appeals unreasonably applied *Jackson* when it rejected his claim of insufficient evidence to support the first-degree robbery conviction and the corresponding armed criminal action conviction.

Under *Jackson*, there is sufficient evidence to satisfy the Due Process Clause of the Fourteenth Amendment if, "viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." 443 U.S. at 319. This standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Id.* Because we must determine whether the Missouri Court of Appeals unreasonably applied this deferential standard, Harden's sufficiency claim is "subject to two layers of judicial deference." *Coleman v. Johnson*, 566 U.S. 650, 651 (2012) (per curiam).

The first-degree robbery charge alleged that Harden forcibly stole Harper's wallet and caused serious physical injury to Harper in the course of doing so. *See* Mo. Rev. Stat. § 569.020 (1979). The armed criminal action allegation was that Harden carried out a first-degree robbery with a dangerous instrument (the concrete block). *See id.* § 571.015 (1979). Harden concedes that there was ample circumstantial evidence that he murdered Harper using a concrete block and therefore caused Harper serious physical injury. The issue in dispute is whether a reasonable state court could conclude that there was sufficient evidence to show that Harden caused physical injury to Harper "in the course of" stealing his wallet.

In resolving the direct appeal, the Missouri Court of Appeals pointed to several pieces of circumstantial evidence. *Harden*, No. SD30479, at 7-9. Harden was present

when Harper withdrew $220 from the ATM.  Harper gave some, but not all, of this money to Harden.  About an hour after the ATM withdrawals, Harden and Harper were seen together outside Brown's Grocery.  Later that morning, a shirtless man matching Harden's description was seen walking along the highway near a farm shop. Soon thereafter, Harper's body was discovered behind the farm shop, only a few hundred yards from Brown's Grocery.  Harper's wallet, empty of cash, was recovered from a trash can in the parking lot of Brown's Grocery.  The record also showed that Harden lived off meager unemployment income and told Singletary he was "broke."

This circumstantial evidence suggests that Harden knew of the cash in Harper's wallet and had motive and an opportunity to steal the wallet.  It is undisputed at this juncture that Harden murdered Harper.  Harper's empty wallet was recovered near the murder scene.  The trial court inferred from the circumstances that Harden caused serious injury to Harper in the course of stealing his wallet.  The question for the Missouri Court of Appeals was whether any rational trier of fact could make this inference.  The decision of the court of appeals to uphold the trial court's finding was not an objectively unreasonable application of *Jackson*.

In reaching a contrary conclusion, the district court said the State "failed to present any evidence of a nexus between the violence and the stealing."  The court contrasted this case with the evidence in two other Missouri cases where the state supreme court held the evidence was sufficient to support a conviction for first-degree robbery.  In *State v. Rhodes*, 988 S.W.2d 521 (Mo. 1999), the defendant admitted killing the victim and stealing some of her possessions, as well as forming the intent to steal before entering the victim's home.  *Id.* at 525-26.  In *State v. Weems*, 840 S.W.2d 222 (Mo. 1992), the defendant admitted strangling the victim and then taking some of his possessions.  *Id.* at 225.  The district court noted that unlike the defendants in *Rhodes* or *Weems*, Harden did not confess to killing Harper or stealing the wallet, and unlike in *Rhodes*, there was no direct evidence that Harden formed the intent to steal before murdering Harper.  These gaps in the evidence, according to the

district court, made it unreasonable to infer that Harden murdered Harper "in the course of" stealing the wallet.

There are two principal difficulties with this analysis. *Rhodes* and *Weems* might have been stronger cases than this one, but neither establishes that an admission by the defendant or direct evidence of intent is required to prove a robbery case. Circumstantial evidence is just as probative as any other type of evidence, *Garrison v. Burt*, 637 F.3d 849, 855 (8th Cir. 2011), and a circumstantial case can be sufficient to prove that a defendant acted with an intent to steal and forcibly stole property. More significantly, decisions of the Missouri Supreme Court are not the correct frame of reference in applying AEDPA in a federal habeas action. The issue here is not whether the Missouri Supreme Court would have agreed with the Missouri Court of Appeals, but whether the decision of the Missouri Court of Appeals is an unreasonable application of the Supreme Court's decision in *Jackson*. Harden points to no comparable case from the Supreme Court of the United States to suggest that the Missouri court's decision here was unreasonable, and we conclude that it was not.

\*     \*     \*

The judgment of the district court is reversed.

_____

-7-