STATE of Missouri, Respondent,

v.

Vincent McFADDEN, Appellant.

No. SC 89429.

Supreme Court of Missouri,
En Banc.

Jan. 29, 2013.

Rehearing Denied March 19, 2013.

Janet M. Thompson, Public Defender's Office, Columbia, for McFadden.

Daniel N. McPherson, Attorney General's Office, Jefferson City, for the State.

RICHARD B. TEITELMAN, Chief Justice.

Vincent McFadden (McFadden) was found guilty of first-degree murder, section 565.020, RSMo 2000,[1] and armed criminal action, section 571.015. The circuit

1. All references to statutes are to RSMo 2000, unless noted otherwise.

court sentenced McFadden to death. This Court has exclusive jurisdiction. Mo. Const. art. V, sec. 3. The judgment is affirmed.

### Facts

McFadden does not contest the sufficiency of the evidence. Viewed in the light most favorable to the verdict, the evidence shows that on May 15, 2003, McFadden confronted Eva Addison and told her that she and her sisters needed to leave the city of Pine Lawn. Shortly after this confrontation, Eva's sisters, Leslie and Jessica, arrived. Eva told them that they needed to leave Pine Lawn. Before they could leave, McFadden returned. He pointed a gun at Leslie and pulled the trigger. The gun did not fire. Before leaving, McFadden stated that "one of these ho's has got to die tonight."

Leslie left the scene in order to call for a ride out of Pine Lawn. As Leslie was walking down the street, Eva saw the car in which McFadden had been riding drive around the corner. Eva watched as McFadden shot Leslie several times. Leslie died from a gunshot wound to her head.

Following a jury trial, McFadden was found guilty of first-degree murder and armed criminal action. During the penalty phase, the State submitted six statutory aggravating circumstances based on McFadden's previous serious assaultive convictions for first-degree murder, assault and armed criminal action.[2] The jury found beyond a reasonable doubt that McFadden had committed each of the six serious assaultive convictions alleged in statutory aggravators submitted by the State. The jury assessed a sentence of death. McFadden appeals.

**2.** The alleged serious assaultive convictions included McFadden's convictions for first-degree murder and armed criminal action for killing Todd Franklin in 2002. This Court

### Standard of review

■ On direct appeal, a death sentence is reviewed for prejudice, not just mere error. *State v. McFadden,* 369 S.W.3d 727, 736 (Mo. banc 2012). This Court will reverse a trial court's decision only when an alleged error is so prejudicial that the defendant was deprived of a fair trial. *Id.* Prejudice exists when there is a reasonable probability that the trial court's error affected the outcome at trial. *Id.* Evidence admitted at trial is reviewed in the light most favorable to the verdict and is reviewed for an abuse of discretion. *Id.*

■ Many of the points on appeal raised by McFadden are not preserved for appeal. Accordingly, these points can be reviewed only for plain error. Rule 30.20. Plain error is found when the alleged error " 'facially establish[es] substantial grounds for believing a manifest injustice or miscarriage of justice occurred.' " *McFadden,* 369 S.W.3d at 736, quoting *State v. Dorsey,* 318 S.W.3d 648, 652 (Mo. banc 2010).

### Point One: Juror non-disclosure

■ McFadden asserts that the trial court plainly erred in entering a judgment of conviction for first-degree murder and sentencing him to death because juror Jimmy Williams failed to disclose that, three years prior to the trial in this case, he was a member of the venire panel in McFadden's trial for assault and armed criminal action. Although Williams did not serve as a juror in that case, the trial court clearly and specifically asked Williams and a number of other prospective jurors if any of them recognized

recently affirmed those convictions and McFadden's death sentence in *State v. McFadden,* 369 S.W.3d 727 (Mo. banc 2012).

McFadden. Although Williams had acknowledged in a written questionnaire that he was a prospective juror in a trial for assault and armed criminal action, he did not indicate to the trial court that he recognized McFadden. McFadden asserts that Williams' disclosure was intentional and prejudicial.

■ Nondisclosure can occur only after a clear question is asked during voir dire. *Saint Louis University v. Geary*, 321 S.W.3d 282, 295 (Mo. banc 2009). In this case, the trial court clearly asked Williams whether he knew or recognized McFadden. Williams did not indicate that he knew or recognized McFadden. McFadden asserts that Williams' response that he did not know or recognize McFadden constituted intentional nondisclosure.

■ Intentional nondisclosure occurs when: 1) there is no reasonable inability to comprehend the information solicited by the question asked of the prospective juror, and 2) the prospective juror remembers the experience or that it was of such significance that the juror's purported forgetfulness is unreasonable. *Geary*, 321 S.W.3d at 295–296. "[B]ias and prejudice will normally be presumed if a juror intentionally withholds material information." *Id.*, quoting *State v. Mayes*, 63 S.W.3d 615, 625 (Mo. banc 2002). Accordingly, a finding of intentional nondisclosure of a material issue is tantamount to a per se rule mandating a new trial. *Id.*

■ In contrast, unintentional nondisclosure "exists where, for example, the experience forgotten was insignificant or remote in time, or where the [venireperson] reasonably misunderstands the question posed." *Geary*, 321 S.W.3d. at 295, quoting *Williams By Wilford v. Barnes Hosp.*, 736 S.W.2d 33, 36 (Mo. banc 1987). If the nondisclosure was unintentional, "a new trial is not warranted unless prejudice

resulted from the nondisclosure that may have influenced the jury's verdict." *Id.*; quoting *Mayes*, 63 S.W.3d at 625. In the case of unintentional nondisclosure, the party seeking the new trial has the burden of proving prejudice. *Geary*, 321 S.W.3d at 296. Allegations of nondisclosure are not self-proving and must be proven. *State v. Smith*, 944 S.W.2d 901, 922 (Mo. banc 1997). The record must support all allegations of nondisclosure and prejudice, and the trial court's findings are reviewed for abuse of discretion. *Geary*, 321 S.W.3d at 296.

McFadden has not proven that Williams intentionally failed to disclose the fact that he was a prospective juror in McFadden's prior trial for assault and armed criminal action. McFadden notes correctly that Williams was on the venire panel at his earlier trial for assault and armed criminal action. However, McFadden's intentional nondisclosure argument is premised solely on the assumption that it is unreasonable to presume that Williams failed to recognize McFadden when, three years earlier, Williams had been questioned during voir dire at McFadden's trial for assault and armed criminal action. The fact that Williams participated in a voir dire three years before he was questioned in this case does not necessarily mean that he intentionally failed to disclose that information. Just as it is plausible to assume that Williams may have remembered McFadden from the earlier trial, it is equally plausible to assume that Williams's memory had faded. If Williams had no recollection of McFadden, then there was no intentional nondisclosure. McFadden offers no evidence to prove that Williams recalled that McFadden was the defendant in the previous trial and intentionally failed to disclose that fact. Furthermore, McFadden has failed to prove that he was in any way prejudiced so as to warrant a new trial based on unintentional nondisclosure.

There is no basis for finding that the trial court plainly erred by declining to declare a mistrial based on Williams' service as a juror in this case.

### Point Two: Improper statutory aggravator instruction

■■■ McFadden asserts that the trial court erred in submitting Instruction No. 21, based on MAI–CR 3d 314.40, because it submitted his prior serious assaultive convictions in six separately numbered paragraphs. McFadden argues that by submitting the previous convictions in separate paragraphs, the jury was encouraged to believe that there were more aggravating circumstances than mitigating circumstances and that death was the appropriate sentence.

This Court repeatedly has rejected the argument that statutory aggravators must be submitted in one paragraph. *See McFadden*, 369 S.W.3d at 742; *State v. Taylor*, 18 S.W.3d 366 (Mo. banc 2000)(it is permissible to separate prior convictions rather than listing all of the prior convictions together as one statutory aggravator); *State v. Black*, 50 S.W.3d 778, 792 (Mo. banc 2001)(finding the trial court properly listed prior convictions as separate statutory aggravators). The trial court did not err in submitting the statutory aggravators in separate paragraphs.

### Point Three: Removal of prospective jurors for cause

■■■ The trial court sustained the State's motion to strike three venire members for cause after finding that these jurors indicated that they would not sign a verdict that imposed a death sentence. McFadden asserts that the trial court plainly erred in striking venire members Behrens and Stevens and abused its discretion in striking venireperson Brunetti.

■■■ A prospective juror in a capital case may be excluded for cause when "the juror's views would prevent or substantially impair the performance of his [or her] duties as a juror in accordance with his [or her] instructions and his [or her] oath." *McFadden*, 369 S.W.3d at 738; quoting *Wainwright v. Witt*, 469 U.S. 412, 424, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985). A juror's qualifications are not determined conclusively by a single answer but rather from the entire voir dire examination. *Id.*, citing *State v. Davis*, 318 S.W.3d 618, 639 (Mo. banc 2010).

Whether reviewed for plain error or abuse of discretion, McFadden has not demonstrated that the trial court erred in striking Behrens, Stevens or Brunetti. These venire members stated that they could consider both life imprisonment and the death penalty, but they also all testified that they could not sign a death verdict as a jury foreperson.

■■■ A prospective juror's reluctance to sign a death verdict is not necessarily conclusive. *State v. Deck*, 303 S.W.3d 527, 538 (Mo. banc 2010). However, where, as in this case, a prospective juror indicates that he or she can consider both life imprisonment and the death penalty while also stating unequivocally that he or she cannot sign a death verdict, the trial court is in the best position to consider whether that person fully can consider both punishments. *Id.* Each of these venire members stated that they could not sign a death verdict. This amounts to an admission that they may be unwilling to follow the law by holding the State to a higher burden of proof. *See State v. Middleton*, 995 S.W.2d 443, 460 (Mo. banc 1999) (finding the trial court did not abuse its discretion in striking a venireperson for cause after a statement that the venireperson would require proof beyond all doubt). The trial court did not plainly err or abuse

its discretion in striking these venire members for cause.

### Point Four: Serious Assaultive Convictions

McFadden asserts that the trial court erred in not instructing the jury that it was required to make a factual determination that his prior convictions were "serious assaultive" convictions. McFadden bases his argument on *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), and *Ring v. Arizona*, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002).

McFadden raised this same argument in the appeal from his conviction for the first-degree murder of Todd Franklin. This Court rejected this argument then and rejects it again because the determination of whether a prior offense is "serious assaultive" is a question of law for the court to decide *McFadden*, 369 S.W.3d at 744.

### Point Five: Instructions failed to state proper burden of proof

McFadden argues the trial court erred in submitting Instructions Nos. 22 and 24, based on MAI–CR3d 313.44, the mitigating circumstances instruction, and MAI–CR3d 314.48, the unanimity instruction. McFadden claims these instructions shift the burden of proof from the State to the defendant and are in conflict with *State v. Whitfield*, 107 S.W.3d 253 (Mo. banc 2003); *Ring*, 536 U.S. 584, 122 S.Ct. 2428; *Apprendi*, 530 U.S. 466, 120 S.Ct. 2348; and section 565.030.4.

This Court repeatedly has rejected the argument that these instructions improperly shift the burden of proof. *McFadden*, 369 S.W.3d at 744; *see also Davis*, 318 S.W.3d at 643; *State v. Johnson*, 284 S.W.3d 561, 587–89 (2009); *State v. Zink*, 181 S.W.3d 66, 74 (2005); and *State v.*

*Taylor*, 134 S.W.3d 21, 30 (Mo. banc 2004). The trial court did not err in submitting Instructions Nos. 22 and 24.

### Point Six: Prosecutor's statements and arguments

McFadden argues that the prosecutor made dozens of improper arguments and statements at various stages of the trial. The majority of McFadden's claims are not preserved, and he asserts that the trial court should have granted him a mistrial sua sponte. Under a plain error standard of review, McFadden must show that the alleged improper argument had a decisive impact on the outcome of the trial. *McFadden*, 369 S.W.3d at 746. For the few statements to which McFadden objected, he asserts that the trial court abused its discretion.

#### (1) Voir dire

McFadden alleges the State made improper arguments during voir dire. First, McFadden claims the prosecutor improperly introduced himself as working for the county's elected prosecutor. McFadden offers no support for how or why this introduction by the State prejudiced the venire panel. This Court rejected the same argument in *McFadden*, 369 S.W.3d at 746.

Second, McFadden asserts that the prosecutor misstated the law by telling every panel without objection that, if all jurors found mitigators outweighed aggravators, a life verdict would result, but if only one juror found aggravators outweighed mitigators, the jury continued considering death. McFadden asserts that these statements could have led the jury to interpret the instructions and verdict form to preclude considering mitigators unless the jury unanimously found the existence of mitigating circumstances. However, as

established in response to McFadden's fifth point on appeal, the instructions pertaining to aggravating and mitigating circumstances are correct. Juries are presumed to follow the instructions, and there is no indication in this case that the jurors did not. The trial court did not plainly err by declining to declare a mistrial sua sponte.

### (2) Guilt phase closing argument

█ McFadden asserts that the State made a number of improper guilt-phase closing arguments. First, McFadden asserts that the trial court abused its discretion by allowing the prosecutor to comment about McFadden's failure to testify. As McFadden notes, the prosecutor asked the jury whether "you heard of anyone else that was mad at her other than the defendant?" The prosecutor went on to argue that there was "zero evidence" that the killer was anyone other than McFadden and that there was "no evidence the defendant was anywhere else. . . ." At that point, defense counsel objected, and the trial court instructed the jury to disregard the statement.

█ "The State may refer to a defendant's failure to offer evidence, State v. Tolliver, 839 S.W.2d 296, 300 (Mo. banc 1992), so long as there is no reference to the defendant's failure to testify." State v. Phillips, 940 S.W.2d 512, 519 (Mo. banc 1997). The defendant's failure to testify is encompassed within the defendant's failure to offer evidence. Comments that the evidence is uncontradicted, therefore, are not necessarily prohibited references to a defendant's failure to testify. State v. Walters, 363 S.W.3d 371, 376 (Mo.App.2012)(citing State v. Quinn, 871 S.W.2d 80, 81 (Mo.App.1994)). In this case, the State made the permissible argument that McFadden's defense did not contradict the State's evidence. The trial court intervened and prevented any argument that included an improper comment about McFadden's decision not to testify. The trial court did not err in overruling McFadden's objection.

█ Second, McFadden asserts the state improperly argued two facts that were not in the record. McFadden argues that the prosecutor improperly told the jury that Eva had made a taped statement but that the jury would be unable to hear it. According to McFadden, the prosecutor was permitted to argue, therefore, that the jury should believe evidence it never heard. The prosecutor's argument was that Eva had made multiple statements that she witnessed McFadden shoot and kill Leslie and that McFadden had been unable to identify any material inconsistencies in any of her prior statements. In this context, the State's argument was that the jury could draw a reasonable inference that McFadden would have impeached Eva with any inconsistent taped statement. The State is allowed to argue the reasonable inferences from the evidence. McFadden, 369 S.W.3d at 748.

█ McFadden also argues that the trial court abused its discretion by overruling his objection to the State's argument that McFadden would have killed Eva if he had known that Eva had witnessed Leslie's murder. McFadden asserts there was no evidence to support this argument. That is incorrect. There was evidence that McFadden had threatened to kill Eva if she identified him as the killer. Eva was allowed to testify that McFadden had threatened her, and the jury heard a taped conversation involving Eva, McFadden and another inmate in which McFadden indicated that Eva should not testify against him. The State's argument was a reasonable inference from evidence in the case. The trial court did not abuse its discretion in overruling this argument.

McFadden's next argument is that the State improperly vouched for Eva's credibility during closing argument. On direct examination, the prosecutor questioned Eva regarding her eyesight and asked her to read a clock at the back of the courtroom. Eva initially said that the clock indicated the time as 10:18. She then clarified that the clock indicated that the time was 11:18. Eva then testified that she did not wear glasses and that she had no known vision problems. During closing argument, the prosecutor argued that Eva had good eyesight and attributed her initial misreading of the clock in the courtroom to glare on the clock face. McFadden did not object. There was no improper vouching because the State's argument was based on evidence in the case and the physical condition of the courtroom in which the trial was conducted. The trial court did not plainly err in declining to declare a mistrial sua sponte.

McFadden argues that the trial court plainly erred in permitting the prosecutor to make two improper arguments that appealed to the jury's emotion. In his first claim, the prosecutor argued that that the worst place to shoot a woman is in the face and that McFadden's actions were particularly vile because he shot Leslie in the face. This claim is without merit. First, the argument is supported by the evidence because McFadden did shoot Leslie in the face. Second, the argument that the "worst place to a shoot a woman" is in the face is a permissible rhetorical flourish that does not constitute plain error. *State v. Rhodes,* 988 S.W.2d 521, 527 (Mo. banc 1999).

In McFadden's second claim, the prosecutor asserted that he would "answer [Leslie's] questions" because she "is not here to tell you." This argument was in response to McFadden's argument that it made no sense for Leslie to walk to a skating rink if McFadden in fact had threatened to kill her. The prosecutor stated that he would speak for Leslie and then explained her decision to walk to the rink by stating that "I wanted to get the hell out of there because he had come back with a gun after I got there ... [w]ell, I'm getting out of Pine Lawn. That's why." This argument was a rebuttal to McFadden's argument, and prosecutors are given considerable leeway in rebuttal, even if the comment otherwise would be improper. *State v. Sanchez,* 186 S.W.3d 260, 265 (Mo. banc 2006).

### (3) Penalty phase closing argument

McFadden argues that the prosecutor made numerous improper statements and arguments that warrant a new trial. Most of these claimed errors are not preserved, and none have merit.

McFadden asserts that the prosecutor improperly told the jury to count all of McFadden's six serious assaultive convictions as separate statutory aggravators. What the prosecutor said was that any one of the six convictions was a sufficient basis for the jury to find the existence of prior serious assaultive convictions as an aggravating circumstance. That is a correct statement of the law and is not plain error. *See State v. Gill,* 167 S.W.3d 184, 193 (Mo. banc 2005)(only one statutory aggravating circumstance must be found for the jury to recommend the imposition of the death penalty).

McFadden asserts that the prosecutor improperly argued that the sentencing decision should be based on McFadden's actions and the fact that he came from a good family should not be considered. McFadden does not develop any argument as to why the prosecutor's argument was improper. This Court likewise is unable to

identify any cases indicating that this type of argument constitutes reversible error.

■ McFadden asserts that the prosecutor improperly argued that it was time for the jury to hold McFadden accountable because "[h]e's been spitting on the floor of courtrooms for years in all those cases and no one held him accountable ... [a]nd murderers have no right not to pay for their crimes." "The State may assert its opinion regarding the imposition of the death penalty as long at it is based upon the evidence presented." *McFadden*, 369 S.W.3d at 751, quoting *State v. Strong*, 142 S.W.3d 702, 726 (Mo. banc 2004).

■ McFadden asserts that the trial court abused its discretion in not ordering a new trial based on the prosecutor's improper argument relating to McFadden's prior conviction for first-degree murder for killing Todd Franklin. Defense counsel objected and requested that the trial court instruct the jury to disregard the prosecutor's statement. The trial court sustained the objection and so instructed the jury. McFadden received the relief he requested and, therefore, has no claim of reversible error. *See State v. Scurlock*, 998 S.W.2d 578, 586 (Mo.App.1999).

McFadden asserts that the prosecutor improperly argued that the jury already had agreed to vote for the death penalty by agreeing to serve as jurors in the case. This misstates the prosecutor's argument. The prosecutor stated that all jurors had agreed that, "in the proper case," they could impose the death penalty. McFadden omits the fact that immediately prior to this statement, the prosecutor reminded the jury that "the law never says you have to vote for one and the law never says you have to vote for the other one, but you got to be fair and impartial." This is a correct statement of the law.

■ McFadden asserts that the prosecutor improperly referred to him as an "evil" person while referring to Leslie as a "good" person. A prosecutor is free to characterize a defendant's criminal conduct if the evidence supports such a characterization. *State v. Simmons*, 944 S.W.2d 165, 182 (Mo. banc 1997), reversed on other grounds in *Roper v. Simmons*, 543 U.S. 551, 125 S.Ct. 1183, 161 L.Ed.2d 1 (2005). For instance, in *Simmons*, this Court held that it was permissible to refer to the defendant as a "predator" and argue that he had an "evil mind" based on evidence that he deliberately and with premeditation murdered the victim by throwing her off a bridge. As in *Simmons*, the evidence in this case supports the prosecutor's characterization of McFadden. The argument was not improper.

■ McFadden asserts the State exceeded the scope of victim impact evidence by telling the jury to consider the impact of McFadden's actions on Franklin's family as well as the victim and family members in this case. McFadden argues that evidence regarding the Franklin family is inadmissible and prejudicial. "Victim impact evidence, and related argument about the impact of the crime upon the victim and victim's family, is admissible in the penalty phase." *McFadden*, 369 S.W.3d at 751, quoting *Bucklew v. State*, 38 S.W.3d 395, 399 (Mo. banc 2001). In this case, the evidence pertaining to the consequences of McFadden's murder of Franklin was admissible to support the State's argument for aggravating circumstances.

■ McFadden asserts that the prosecutor improperly argued that "the defendant does not deserve mercy" and that "justice deserves and demands the death penalty." A prosecutor is allowed to argue that the defendant does not deserve mer-

cy. *State v. Storey*, 40 S.W.3d 898, 911 (Mo. banc 2001).

■ McFadden asserts that the prosecutor improperly argued that the mitigating circumstances were actually aggravating circumstances. The prosecutor argued that "[s]ometimes we hear people are too crazy, too insane, retarded" at which point the trial court · sustained McFadden's objection. The prosecutor went on to argue that McFadden had the capacity to know right from wrong. To the extent that the prosecutor's pre-objection argument implied that mitigating circumstances such as mental capacity should be downplayed, the argument was improper. However, the trial court sustained McFadden's objection, and the jury properly was instructed about how to consider aggravating and mitigating circumstances. The jury is presumed to follow the trial court's instructions. *McFadden*, 369 S.W.3d at 752, citing *State v. Barton*, 240 S.W.3d 693, 703 (Mo. banc 2007). McFadden alleges no facts to overcome this presumption. This argument does not warrant a new trial.

■ McFadden asserts that the prosecutor improperly argued that McFadden's family are "good people." The argument that McFadden's family members are good people is a legitimate argument to support the State's position that there were no mitigating circumstances in this case. None of these statements warrant reversal.

McFadden asserts that the prosecutor made several statements that expressed the prosecutor's personal opinion and raised facts outside the record. The prosecutor asserted that he did not see any mitigating circumstance in this case because there was no evidence that McFadden had been abused as a child. McFadden objected. The trial court did not err in overruling this objection because the

"State may assert its opinion regarding the imposition of the death penalty as long at it is based upon the evidence presented." *McFadden*, 369 S.W.3d at 751; quoting *Strong*, 142 S.W.3d at 726.

■ The prosecutor also asserted that McFadden was evil and mean and, unlike his victims, was able to enjoy his life. McFadden did not object to these statements. These statements are reasonable inferences from the evidence and do not constitute plain error warranting a new trial.

■ McFadden asserts that the trial court abused its discretion in overruling his objection to the prosecutor's argument that McFadden's family members knew he was a fugitive from justice in California. Defense counsel introduced evidence that McFadden went to California following the Todd Franklin murder. One of McFadden's relatives testified that McFadden had traveled to California for a family reunion. In response, the State introduced evidence that McFadden was on a nationwide "wanted" list for shooting two people in California. This argument was a permissible attempt to rebut the testimony of defense witnesses.

■ McFadden asserts that the trial court abused its discretion in overruling his objection to the prosecutor's argument that a .44 caliber handgun produces a "big kick." The trial court did not err because a prosecutor is free to argue matters of common knowledge. *Strong*, 142 S.W.3d at 725.

■ McFadden asserts that the trial court abused its discretion in overruling his objection to the prosecutor's argument that "if this ain't a death penalty case, then there ain't no such thing." This is a permissible argument that the death penalty

is warranted under the facts of the case. *McFadden*, 369 S.W.3d at 751.

■ McFadden asserts that the trial court plainly erred in permitting the prosecutor to argue that "in the old days, we would have allowed the Addison and Franklin families to hunt down like he deserves and get retribution" and that McFadden was Leslie's jury and judge. The prosecutor qualified this argument by noting that is what would have happened "in the old days" and that "[w]e're more civilized now" because McFadden has the right to a jury and to counsel. Even though vividly framed, the argument was not erroneous because it assisted the jury in understanding both the evidence and legal process in this case. "Arguments likely to inflame and excite prejudices of the jury are not improper if they help the jury understand and appreciate evidence that is likely to cause an emotional response." *McFadden*, 369 S.W.3d at 751; quoting *Rhodes*, 988 S.W.2d at 528.

■ McFadden asserts that the prosecutor made several impermissible "send a message" arguments. This Court has held that "send a message" statements are permissible. *See State v. Smith*, 944 S.W.2d 901, 919 (Mo. banc 1997). The State is permitted to argue "the need for strong law enforcement, the prevalence of crime in the community, and that conviction of the defendant is part of the jury's duty to uphold the law and prevent crime." *McFadden*, 369 S.W.3d at 750, quoting *Forrest v. State*, 290 S.W.3d 704, 717 (Mo. banc 2009). The State is also allowed "to argue to the jury that the protection of the public rests with them." *McFadden*, 369 S.W.3d at 749, quoting *State v. Burton*, 219 S.W.3d 778, 781 (Mo.App.2007)(quoting *State v. Kee*, 956 S.W.2d 298, 304 (Mo.App. 1997)). These arguments do not warrant reversal.

■ McFadden asserts that the prosecutor improperly commented about McFadden's failure to testify. The entirety of McFadden's argument is as follows:

Larner argued Vincent's failure to testify. *State v. Barnum*, 14 S.W.3d 587, 591(Mo. banc 2000); § 546.270. Over objection, "This is all aggravating. It's all lack of remorse. It's all aggravating." And, "There's no remorse." He doesn't feel bad about any ... why did he keep doing it? ... why does he keep doing it if he feels so bad about shooting people?

The context of the prosecutor's argument was that McFadden had demonstrated no remorse for his actions. This argument is proper because it was a reasonable inference from the evidence in the case. There was no error.

■ McFadden asserts that the prosecutor improperly appealed to the jury's "visceral emotion." The trial court overruled McFadden's objection to the following argument:

"If it had been a dog, people would be clamoring for the death penalty, if you killed an animal like that ... He shot her down like a dog. And you know what? To him, she is a dog. To him, she's a dog."

The prosecutor went on to argue as follows:

"Ladies and gentlemen, I leave you with Leslie and Todd. Hold them. Hug them. Tell them you love them. But most of all, don't let them down. This verdict is for Leslie and Todd."

These arguments are emotionally charged; however, the facts of this case are inherently emotionally charged. "Arguments likely to inflame and excite prejudices of the jury are not improper if they help the jury understand and appreciate evidence that is likely to cause an emotional response." *McFadden*, 369 S.W.3d at

751, quoting *Rhodes,* 988 S.W.2d at 528. The trial court did not plainly err in allowing this argument.

■ Finally, McFadden asserts that the prosecutor engaged in improper personalization with the following argument:

Ladies and gentlemen, everybody that has a sister or children knows and prays that they never had to look upon the horror that the Addison and Franklin families had had to endure. Because you now know how fleeting life, innocent life, can be, and how quickly innocent life can be taken away by someone with a cruel, evil intent that that man had. Think of the terror. Think of the terror that Leslie went through the last moments of her life on that street. The sheer terror with him putting the gun in her face and clicking it and laughing and her begging for her life, knowing that she was 18 years old and about to die for his pleasure. Think of the terror that Eva went through watching all of this, helplessly watching, from the bushes as this entire murder unfolds. Think of the terror, the horror of Todd's sister, Tara, and mother coming home from the store ... Think of it. They come home. They see this body of their son in the driveway and the blood next door to where they live. Think of the terror and the horror of the mother and the sister of Todd Franklin.

■ "Improper personalization is established when the State suggests that a defendant poses a personal danger to the jurors or their families." *McFadden,* 369 S.W.3d at 750, quoting *Deck,* 303 S.W.3d at 540. The prosecutor's argument did not suggest a personalized danger to the jurors or their families. For this reason, the argument in this case is distinguishable from cases such as *State v. Storey,* 901 S.W.2d 886, 901 (1995), in which the following argument was found to be improperly personalized:

Think for just this moment. Try to put yourselves in [the victim]'s place. Can you imagine? And, then—and then, to have your head yanked back by its hair and to feel the blade of that knife slicing through your flesh, severing your vocal cords, wanting to scream out in terror, but not being able to. Trying to breathe, but not being able to for the blood pouring down into your esophagus.

Unlike the argument in *Storey,* the argument in this case does not ask the jurors to imagine that they personally were suffering the graphic aspects of the crime. Instead, it asked the jurors to empathize with the victims in a manner consistent with the facts of the case. There was no reversible error in this argument or in any of the other arguments that McFadden has identified.

Point Seven: Evidence of motive for the Todd Franklin murder

McFadden asserts that the trial court erred in overruling objections to evidence and argument in the penalty phase regarding the State's theory that McFadden killed Franklin because Franklin was a witness in a prior prosecution. In McFadden's first direct appeal from his conviction for murdering Franklin, the jury rejected this statutory aggravator. *State v. McFadden,* 191 S.W.3d 648 (Mo. banc 2006) (*McFadden I*). McFadden argues that, as a result, the State was collaterally estopped from presenting that evidence in this trial and that allowing the evidence violates double jeopardy.

■ This Court rejected essentially the same argument in McFadden's most recent appeal from his convictions in the Franklin case. *McFadden,* 369 S.W.3d at 738. A jury's failure to find a particular

aggravating circumstance alleged by the prosecution does not constitute an "acquittal" so as to invoke double jeopardy protections. *Poland v. Arizona*, 476 U.S. 147, 106 S.Ct. 1749, 90 L.Ed.2d 123 (1986). Instead, "the failure to find a particular aggravating circumstance forms the basis for judgment of acquittal on the imposition of the death sentence only when there is a complete failure to find that any aggravating circumstance exists to support the death sentence." *State v. Simmons*, 955 S.W.2d 752, 760 (Mo. banc 1997).

In this case, the State did not submit McFadden's motive to kill Franklin as a statutory aggravator, but did present that evidence for the jury's consideration during the penalty phase. As established in *Poland*, the fact that the jury in *McFadden I* rejected this evidence as insufficient to establish one of the statutory aggravators in that case does not constitute an "acquittal" and, therefore, does not bar the State from presenting that evidence in this case. McFadden was not subjected to double jeopardy, and there was no error.

### Point Eight: Evidence of the circumstances of Todd Franklin's murder

■ McFadden asserts that the trial court abused its discretion in allowing the State, during the penalty phase, to introduce evidence of the circumstances of Franklin's murder. The State presented eight witnesses who testified about the Franklin case. The testimony included that of an eyewitness to the murder, police officers, detectives and forensic examiners, who testified about the evidence in the case, as well as testimony from Leslie Addison's cousin, who stated that McFadden said he felt good about killing Franklin and wanted to celebrate. The State also introduced photographs of the Franklin murder scene. McFadden asserts that

this evidence should have been limited to the fact of McFadden's prior conviction or, alternatively, that the evidence was admissible but was excessive and prejudicial.

■ Contrary to McFadden's argument, the State, during the penalty phase, is not limited to proving the fact of a prior conviction. Instead, Missouri law provides that in the penalty phase of a capital trial, the character and history of the defendant, including prior crimes committed by that defendant, are admissible as relevant to the sentencing. *State v. Nicklasson*, 967 S.W.2d 596, 618 (Mo. banc 1998). This evidence can include the circumstances of the prior conviction. *See Middleton*, 995 S.W.2d at 463 (a videotape of the scene of a previous crime committed by the defendant, including bodies of the victims, was admissible during the penalty phase of a death penalty case).

Alternatively, McFadden argues that some evidence of the circumstances is admissible but that, in this case, the trial court failed to limit the State's introduction of excessive evidence regarding the Franklin murder. The trial court's decision about the scope of the evidence admitted at trial is reviewed for abuse of discretion. *See State v. Winfrey*, 337 S.W.3d 1, 5 (Mo. banc 2011). In this case, the trial court permitted substantial amounts of evidence detailing the Franklin murder. However, the trial court did exercise its discretion to limit the evidence, for instance, by restricting the scope of cross-examination of one witness and limiting the number of photographs the State was allowed to introduce into evidence. The record does not demonstrate that the court abused its discretion or that McFadden was prejudiced. This argument has no merit.

### Point Nine: Proportionality review

This Court is required to conduct an independent review of all death penalty

cases for proportionality. Section 565.035. Section 565.035.3 requires this Court to determine:

(1) Whether the sentence of death was imposed under the influence of passion, prejudice, or any other arbitrary factor; and

(2) Whether the evidence supports the jury's or judge's finding of a statutory aggravating circumstance as enumerated in subsection 2 of section 565.032 and any other circumstance found;

(3) Whether the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime, the strength of the evidence and the defendant.

### (1) Passion and prejudice

McFadden's death sentence was not imposed under the influence of passion, prejudice or any other factor apart from the evidence in the case. McFadden has not identified any such factor to this Court, and his allegations of trial error are without merit.

### (2) Aggravating circumstances

The jury found multiple statutory aggravating circumstances. The jury found McFadden has multiple serious assaultive criminal convictions. There was sufficient evidence supporting each of the jury's findings of statutory aggravators.

### (3) Similar cases

The proportionality review mandated by section 565.035.3 requires consideration of all factually similar cases in which the death penalty was submitted to the jury, including those resulting in a sentence of life imprisonment without the possibility of probation or parole. *McFadden*, 369 S.W.3d at 754, (citing *State v. Deck*, 303 S.W.3d 527, 555–63 (Mo. banc 2010) (J. Stith concurring), and *State v.*

*Anderson*, 306 S.W.3d 529, 544 (2010) (J. Breckenridge concurring)).

This Court has upheld the death sentence when one victim is murdered. *See McFadden*, 369 S.W.3d at 755; *State v. Freeman*, 269 S.W.3d 422 (Mo. banc 2008); *State v. McLaughlin*, 265 S.W.3d 257 (Mo. banc 2008). This Court affirmed death sentences when the defendant had a serious assaultive criminal history. *See McFadden*, 369 S.W.3d at 754, citing *State v. Bowman*, 337 S.W.3d 679 (2011); *Davis*, 318 S.W.3d 618; *Barton*, 240 S.W.3d 693. Further, death sentences have been upheld when a defendant murders someone who is helpless and defenseless. *See McFadden*, 369 S.W.3d at 755; *Anderson*, 306 S.W.3d 529; *State v. Tisius*, 92 S.W.3d 751 (Mo. banc 2002); *State v. Cole*, 71 S.W.3d 163, 177 (Mo. banc 2002).

Although the facts of this case are similar to numerous cases in which the death penalty has been affirmed, McFadden asserts that *State v. Schnick*, 819 S.W.2d 330 (Mo. banc 1991); *State v. Blankenship*, 830 S.W.2d 1 (Mo. banc 1992); *State v. Gilyard*, 257 S.W.3d 654, (Mo.App.2008); and *State v. Beishline*, 926 S.W.2d 501, 505 (Mo.App.1996), demonstrate that the death penalty is disproportionate. This argument is without merit.

As noted above, this Court's proportionality review does not include consideration of cases in which the death penalty was not submitted to the jury. *McFadden*, 369 S.W.3d at 754. The only case McFadden cites in which it is clear that the death penalty was submitted to the jury is *Schnick*, 819 S.W.2d at 330. In *Schnick*, the defendant received a new trial due to an erroneous ruling on a motion to strike a prospective juror for cause. *Id.* at 332. McFadden then asserts that the defendant in *Schnick* pleaded guilty in exchange for a sentence of life without pa-

role. Cases involving guilty pleas are not comparable cases for purposes of this Court's proportionality review. *State v. Bolder,* 635 S.W.2d 673, 685 (Mo. banc 1982).

In addition to this Court's independent review, McFadden asserts three additional arguments to support his position that the death sentence is disproportionate in this case. First, he asserts that too many venire members were struck for cause because they indicated they could not impose the death penalty and that this proves an evolving standard of decency in St. Louis County that prohibits the death penalty. Second, McFadden asserts that the jury did not represent a fair cross section of the community because 17.9 percent of the venire members were African–American while 21.8 percent of the population of St. Louis County is African–American. Finally, he asserts that the State's alleged repeated misconduct deprived him of a fair trial.

### (1) Evolving Standard of Decency

 McFadden asserts that the fact that approximately one-third of the prospective jurors in this case were removed for cause because they could not consider the death penalty proves an "evolving standard of decency" in St. Louis County that prohibits imposition of the death penalty. This particular argument is without merit for one basic reason—the opinion of one-third of one venire panel in one county does not conclusively establish a community standard of any constitutional significance. This argument is without merit.

### (2) Fair cross-section

 McFadden asserts that the 21.8 percent of the population of St. Louis County is African–American but only 17.8 percent of the prospective jurors for his case were African–American. McFadden

then asserts, without any support, that this is a "statistically significant variation."

 "It is well established that a criminal defendant has a constitutional right to the unbiased selection of a jury drawn from a fair cross-section of the community." *Anderson,* 306 S.W.3d at 542 (quoting *State v. Brooks,* 960 S.W.2d 479, 487 (Mo. banc 1997)). "In order to establish a prima facie case, defendant must show that the under-representation of other groups was due to a systematic exclusion in the selection process." *Id;* (citing *State v. Sumowski,* 794 S.W.2d 643, 647 (Mo. banc 1990)). McFadden did not offer statistical evidence that the jury selection procedure systematically excluded black jurors. He relied solely on the jurors in the panel selected for this case. "A single panel that fails to mirror the make-up of the community is insufficient to establish a prima facie case of systematic exclusion." *Id.,* quoting *State v. Ringo,* 30 S.W.3d 811, 820 (Mo. banc 2000).

### (3) Prosecutorial misconduct

As in his sixth point on appeal, McFadden asserts that the State repeatedly made improper arguments and statements. These arguments were rejected in the analysis of McFadden's sixth point on appeal and are rejected once again.

In this case, the death penalty complies with all statutory proportionality requirements.

### Point 10: Improper bolstering

 McFadden claims that the trial court erred and plainly erred in not declaring a mistrial because the State improperly bolstered Eva Addison's testimony by arguing that she consistently had identified McFadden as Leslie's killer.

Eva testified during the guilt phase that she was hiding behind a bush when she

witnessed McFadden shoot Leslie. She testified that the area was lighted, that she saw McFadden's face, body and clothing, and that he was wearing the same clothing as when he had threatened Eva and Leslie just minutes earlier. She did not testify regarding her prior statements. Defense counsel cross-examined Eva and attempted to show that her view of the shooting was obstructed. It was in this context that the prosecutor, on re-direct examination, elicited testimony regarding Eva's prior consistent statements to police in which she identified McFadden as the shooter.

 "Improper bolstering occurs when the out of court statement of a witness is offered solely to be duplicative or corroborative of trial testimony." *State v. Biggs*, 333 S.W.3d 472, 479 (Mo. banc 2011)(quoting *State v. Seever*, 733 S.W.2d 438, 441 (Mo. banc 1987)). McFadden's argument fails because the references to Eva's prior, consistent statements were made during re-direct examination in response to McFadden's argument that Eva reliable could not see and identify who shot Leslie. Prior consistent statements are admissible to rehabilitate the witness. *State v. Davis*, 186 S.W.3d 367, 375 (Mo. App.2005). The trial court did not abuse its discretion in overruling McFadden's objection to the references to Eva's prior, consistent statements.

Point 11: Evidence of other crimes

McFadden asserts that the trial court abused its discretion and plainly erred in not declaring sua sponte a mistrial and by admitting evidence and allowing argument regarding irrelevant, unrelated crimes.

 First, McFadden asserts that the trial court abused its discretion in overruling his objection to a taped jailhouse conversation between McFadden, Eva Addison and an inmate known as "Slim." In one portion of the tape, McFadden urged Eva to say that she did not witness Leslie's murder and that her refusal to testify would be "[l]ike Al did." The trial court overruled the objection. McFadden asserts that reference to "Al" was irrelevant and suggested that McFadden had threatened other witnesses before. However, McFadden was charged with witness tampering and his taped statement containing the reference to "Al" was an integral part of his statement telling Eva to say that she did not witness Leslie's murder. Evidence of other crimes or misconduct is admissible when it is part of the circumstances or sequence of events surrounding the charged offense. *State v. Wolfe*, 13 S.W.3d 248, 262 (Mo. banc 2000).

 Second, McFadden asserts that the prosecutor improperly referred to the taped conversation during the guilt phase opening argument. This argument fails because the point of an opening statement is to explain to the jury the evidence that the party intends to introduce. There is no error in referencing evidence in an opening statement, therefore, if the party has a good faith belief that the evidence is admissible. The taped statement was introduced into evidence during the Franklin trial, so the prosecutor had a good faith basis for concluding that the tape would be admissible in this case as well, and it was. This argument has no merit.

Finally, McFadden argues that the prosecutor improperly referenced Eva's testimony that McFadden had told her to "get my name out of it or your next, bitch." McFadden also argues that the prosecutor improperly referenced McFadden's statement on the tape in which he stated he would "fuck that nigger up." The State is entitled to argue the reasonable inferences from the evidence. McFadden was charged with witness tampering, and this evidence supported a reasonable inference

that McFadden tampered with witnesses. This argument has no merit.

### Point 12: Leading questions

 McFadden asserts that the trial court abused its discretion and plainly erred by repeatedly allowing the prosecutor to ask Eva Addison leading questions, which assisted her testimony and prevented the jury from effectively assessing her credibility. Leading questions are generally impermissible because they suggest the desired answer to the witness. *State v. Miller*, 208 S.W.3d 284, 289 (Mo.App. 2006). However, leading questions are permissible for preliminary matters, when the witness is shy, hostile or has difficulty with English, and when the witness already has answered the question and the attorney simply is repeating the answer. *Id.* The trial court retains the discretion to allow leading questions, and the court's decision will be overturned only if it constitutes an abuse of discretion. *State v. Taylor*, 317 S.W.3d 89, 93 (Mo.App.2010).

 McFadden disputes numerous individual questions and asserts with little analysis that the questions warrant a new trial. Whether McFadden objected to a particular question or not, he bears the burden of demonstrating that the trial court erred in allowing the questions and that he was thereby prejudiced. He has failed to make this showing.

 While the prosecutor did ask a number of leading questions, it is also true that the trial court specifically found that Eva was a "rough witness" and noted that it was difficult for the prosecutor to question her. The court then noted that "I've given you leeway with your questions" and that the prosecutor needed to not lead the witness and "just get it out with open-ended questions." When counsel is faced with a difficult witness, the trial court properly may exercise its discretion to al-low some leading questions to prompt the witness to give pertinent answers or to refer to a prior statement or testimony. *Miller*, 208 S.W.3d at 289; *State v. Edberg*, 185 S.W.3d 290, 294 (Mo.App.2006). That is what happened in this case. McFadden has not demonstrated that the trial court abused its discretion or committed plain error in not ordering a new trial based the prosecutor's questioning of Eva Addison.

### Point 13: Admission of other testimony and denial of motion to produce records

McFadden asserts that the trial court abused its discretion and plainly erred in admitting testimony from Stacy Stevenson and Eva Addison, overruling McFadden's request for Eva's school and medical records, and allowing the prosecutor to "testify" that Eva's eyesight was excellent.

#### (1) Stevenson testimony

Stacy Stevenson lived near the site where Leslie was killed. He testified that he overheard an argument between a man and a woman. Stevenson stated that he heard the man say: "Fucking bitch, come here, where you fixing to go? I told you and your sister to get the fuck down from here and stay the fuck from down here." Prior to trial, McFadden filed a motion in limine to exclude Stevenson's testimony as hearsay. The trial court overruled the objection. At trial, Stevenson testified consistently with his prior statement and also noted that he could not identify the man who made the statement.

 Hearsay is an out-of-court statement offered for the truth of the matter asserted. *State v. Copeland*, 928 S.W.2d 828, 848 (Mo. banc 1996). While hearsay statements are generally inadmissible, there are a number of exceptions. Stevenson's testimony regarding the

threatening statements fits within the "verbal acts" exception, which allows a court to admit into evidence a statement that tends to show motive or intent to undertake the act that is the subject of the litigation. *Id.* The relevance of Stevenson's testimony that he overheard the threats was not dependent on the truth of the particular assertions in the threat. Instead, relevance was based on the fact that Stevenson overheard a man making threatening statements to a woman right before and in the same area where McFadden shot and killed Leslie. *See State v. Joiner,* 823 S.W.2d 50, 55 (Mo.App.1991)(evidence of threats are admissible independent of the truth of the particular statement in order to show motive and intent). The trial court did not err in overruling McFadden's objection to Stevenson's testimony.

### (2) School and medical records

█ McFadden asserted that Eva's school and medical records should be disclosed because they contained information that would cast doubt on her credibility because the records would indicate whether Eva's eyes had been tested. Defense counsel contended that Eva's eyesight was questionable because, during the Franklin murder trial, she had some difficulty reading a clock at the back of the courtroom. To compel disclosure of Eva's school and medical records, McFadden was required to demonstrate more than a mere possibility that the records might be helpful. *See State v. Taylor,* 134 S.W.3d 21, 26–27 (Mo. banc 2004). He failed to do so. As noted above, Eva was able to read the clock during the Franklin trial. Further, there was no other indication that she had any visual impairment. The trial court did not abuse its discretion in overruling McFadden's motion to compel disclosure of Eva's school and medical records.

### (3) Prosecutor "testified" about Eva's eyesight

McFadden asserts that the trial court plainly erred in not declaring a mistrial because, during closing argument, the prosecutor argued that Eva had good eyesight. The State is permitted to argue the reasonable inferences from the evidence. *McFadden,* 369 S.W.3d at 748. The prosecutor's argument regarding Eva's eyesight included a reference to her ability to read a car rental agreement that was introduced into evidence as well as her ability to read a clock in the back of the courtroom. The argument that Eva had good eyesight is a reasonable inference from the evidence at trial. The State was free to argue that Eva had sufficiently good eyesight to identify McFadden as the shooter. There was no plain error.

### Point 14: Tape of jailhouse telephone call

McFadden claims the trial court plainly erred and abused its discretion in admitting into evidence a tape-recorded conversation between McFadden, Eva and another inmate known as "Slim." McFadden asserts that there was not an adequate foundation to admit the recording and because it contained hearsay.

This same recording was admitted into evidence in McFadden's trial for murdering Franklin, and McFadden made the same claim that the tape was admitted erroneously. *McFadden,* 369 S.W.3d at 752. This Court held then that there was an adequate foundation to admit the tape into evidence because there was no indication that the recording was inaccurate and Eva identified the recording as the conversation she had with McFadden and Slim. *Id.* at 753. This Court also held that the tape was not inadmissible hearsay because it contained McFadden's admissions. *Id.*

Likewise, in this case, Eva testified about the same foundational facts that supported admission of the tape in McFadden's trial for murdering Franklin. There was an adequate foundation to admit the tape, and the tape contained McFadden's admissions, which properly were admitted into evidence. McFadden's claim is without merit.

### Point 15: Striking prospective jurors who were unable to consider the death penalty

 McFadden asserts that the trial court plainly erred in allowing the State to strike for cause 20 prospective jurors who stated that their religious beliefs prevented them from imposing the death penalty.

The State cannot strike a prospective juror for cause if he or she states a general objection to the death penalty or expresses a conscientious or religious objection to the death penalty. *Gray v. Mississippi*, 481 U.S. 648, 657–58, 107 S.Ct. 2045, 95 L.Ed.2d 622 (1987). However, the State can strike a prospective juror if his or her beliefs would prevent the juror from following the court's instructions in a death penalty case. For instance, in *Storey*, 40 S.W.3d at 905, a prospective juror stated that his moral and religious beliefs prevented him from considering the death penalty. Later, he said that it was possible that he could consider the death penalty. The trial court sustained the State's strike for cause. This Court held that strike was permissible because the prospective juror's equivocal and shifting responses provided a sufficient basis for the trial court to conclude that the juror would not be able to follow the court's instructions regarding the death penalty. *Id.*

In this case, the majority of stricken venire members voiced unequivocal religious or moral objections to the death penalty and plainly stated that they would not consider the death penalty. Others, like the prospective juror in *Storey,* voiced equivocal objections to the death penalty and never stated that they would, without reservation, follow the court's instructions. The court did not plainly err in declining to overrule the State's strikes.

### Conclusion

The judgment is affirmed.

RUSSELL, BRECKENRIDGE, FISCHER, STITH and DRAPER, JJ., concur.

WILSON, J., not participating.

