**STATE of Missouri, Respondent,**

v.

**Anthony K. HILL, Appellant.**

**No. ED 98317.**

Missouri Court of Appeals,
Eastern District,
Division One.

June 18, 2013.

Application for Transfer to Supreme Court Denied Oct. 10, 2013.

Application for Transfer Denied Nov. 26, 2013.

Alexa Irene Pearson, Columbia, MO, for Appellant.

Chris Koster, Attorney General, Jennifer A. Rodewald, Assistant Attorney General, Jefferson City, MO, for Respondent.

## *OPINION*

GLENN A. NORTON, J.

Anthony K. Hill appeals the judgment entered upon a jury verdict convicting him of two counts of first-degree statutory rape, one count of second-degree statutory rape, three counts of first-degree statutory sodomy, one count of second-degree statutory sodomy, and one count of first-degree child molestation. We affirm.

## I. BACKGROUND

Hill was charged with committing several sex offenses arising out of sexual contact

between Hill and his step-daughter, M.G. ("Victim"). The cause proceeded to trial.

During voir dire, the State inquired whether any venireperson knew Victim's mother, M.H. ("Mother"). The inquiry drew the following exchange from venireperson Edward J. Rolfes, Jr.:

[State]: Thank you. Anybody else? Oh, I'm sorry. Juror [Rolfes]?

[Rolfes]: I just—I think shortly after we graduated from high school was when I knew [Mother]. It's been a long time ago.

[State]: Have you seen her lately?

[Rolfes]: I think at a bar where she works.

[State]: Okay. Do you talk with her? Do you socialize with her?

[Rolfes]: Hi, how you doing, that's about it.

[State]: Don't know what's going on in her family life?

[Rolfes]: No, uh-uh, no.

[State]: Any mention of [Hill] during your—

[Rolfes]: No.

[State]: You believe you could be fair and impartial?

[Rolfes]: Yes.

Hill's counsel conducted no examination of Rolfes regarding his relationship with Mother and did not seek to remove Rolfes from the jury pool through the use of a peremptory challenge or a motion to strike for cause. Rolfes served as a juror and was selected to be the jury foreperson. The jury convicted Hill of two counts of first-degree statutory rape, one count of second-degree statutory rape, three counts of first-degree statutory sodomy, one count of second-degree statutory sodomy, and one count of first-degree child molestation.

Hill filed a motion for a new trial, alleging that Rolfes failed to disclose the full nature of his relationship with Mother during voir dire. Specifically, Hill asserted that Rolfes failed to disclose his relationship with Mother on Facebook, a social networking website that allowed Rolfes the opportunity to communicate with Mother and view postings made by Mother. Hill contended the Facebook relationship was contrary to Rolfes' answers given during voir dire and therefore he was prejudiced during the jury selection process. The trial court held a hearing on the motion during which Rolfes and Mother testified.

Rolfes testified that he knew Mother from when they went to school together. Rolfes considered himself and Mother to be friends but had only seen Mother one time in the previous fifteen to twenty years. Rolfes admitted that he had been "friends" with Mother on Facebook since about four months prior to trial but indicated that he did not associate with Mother on a regular basis. Rolfes testified that he did not use Facebook often and his Facebook interaction with Mother was limited to: (1) an initial message, consisting of "hey, what's up?", when they first became Facebook friends; and (2) a post-trial message written by Rolfes to congratulate Mother on the trial.[1] Rolfes did not access Facebook during trial and did not view any postings made by Mother during the trial. When asked why he did not indicate during voir dire that he was friends with Mother on Facebook, Rolfes testified that

1. Counsel for Hill also questioned Rolfes about a posting on his Facebook account indicating that he had answered a question about Mother. However, Rolfes clarified that the posting was a questionnaire or game application, not involving any communication with Mother, which allows people to answer questions about their Facebook friends. Rolfes indicated that he did not actually answer any question about Mother because he never earned enough points to play the game.

he did not ever socialize with Mother. The following exchange took place:

[State]: And when I asked you, do you talk with her, do you socialize with her, would your response be the same today?

[Rolfes]: It's a more or less, Hi, how you doing. That's it.

[State]: Well, let me rephrase my question. When I asked you, do you talk with her, do you socialize with her, did you understand that to encompass [being a] Facebook friend?

[Rolfes]: No.

. . .

[State]: Okay. So you didn't interact with her on a regular basis?

[Rolfes]: No, uh-huh.

Mother testified that she went to high school with Rolfes but had no communication with him for seventeen years prior to the trial. Mother indicated that she became friends with Rolfes on Facebook a few months before trial but did not communicate with Rolfes using Facebook until after trial. Mother also indicated that, several months prior to the trial, she posted a photo to her Facebook account which Rolfes indicated that he "liked." During the trial, Mother posted updates to her Facebook account asking her friends to keep her family in their prayers. However, prior to trial, Mother "defriended" Rolfes on Facebook so that he could not view any of her postings. When the trial was over, Mother "refriended" Rolfes, and Rolfes sent her a message congratulating her on the trial.

The trial court denied Hill's motion for a new trial. Hill appeals.

## II. DISCUSSION

In his sole point on appeal, Hill claims that the trial court abused its discretion in denying his motion for new trial based on juror misconduct. He argues that his right to a fair trial before a fair and impartial jury was violated when Rolfes intentionally failed to disclose that he had a relationship with Mother on Facebook. We disagree.

We review a trial court's ruling on the existence of juror misconduct for an abuse of discretion. *State v. Moore,* 366 S.W.3d 647, 652 (Mo.App. E.D.2012). A trial court abuses its discretion "when a ruling is clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration." *Id.*

The right to a fair and impartial jury requires potential jurors to fully and truthfully answer questions during voir dire in order to ensure that a defendant can properly exercise challenges for cause and peremptory strikes. *State v. Griffith,* 312 S.W.3d 413, 417 (Mo.App. S.D.2010). Intentional juror nondisclosure occurs when: (1) there is no reasonable inability to comprehend the information solicited by the question asked; and (2) the venireperson remembers the experience or it was of such significance that any purported forgetfulness is unreasonable. *State v. McFadden,* 391 S.W.3d 408, 418 (Mo. banc 2013). "[A] finding of intentional nondisclosure of a material issue is tantamount to a per se rule mandating a new trial." *Id.* Unintentional disclosure occurs when the venireperson reasonably misunderstands the question posed or when the experience forgotten was insignificant or remote in time. *Id.* A finding of unintentional disclosure will only warrant a new trial if prejudice resulted that may have influenced the jury's verdict. *Id.*

As a threshold issue, we must determine whether a nondisclosure actually occurred. *Saint Louis University v.*

*Geary,* 321 S.W.3d 282, 295 (Mo. banc 2009). Allegations of nondisclosure are not self-proving and must be supported by the record. *McFadden,* 391 S.W.3d at 418. A nondisclosure, whether intentional or unintentional, can only occur after a party asks a clear question during voir dire that unequivocally triggers a duty to disclose. *Payne v. Cornhusker Motor Lines, Inc.,* 177 S.W.3d 820, 841 (Mo.App. E.D.2005). The question is considered clear if "a lay person would reasonably conclude that the undisclosed information was solicited by the question." *Id.* Our review of whether the question was clear is de novo. *Id.*

Here, Hill argues that an intentional nondisclosure occurred when Rolfes, in response to the State's voir dire examination, failed to reveal his Facebook relationship with Mother. During voir dire Rolfes was asked whether he knew Mother, talked with Mother, or socialized with Mother. Rolfes responded that he knew Mother from school and his communication and socialization with Mother was limited to "Hi, how you doing, that's about it." That level of communication and socialization was consistent with his Facebook relationship with Mother. Mother and Rolfes both testified that they did not use Facebook to socialize and communicate with one another. At most, their Facebook relationship prior to trial consisted of nothing more than general pleasantries, consistent with the relationship described by Rolfes during voir dire. Therefore, the extent of their relationship was fully disclosed during voir dire, and a lay person would not reasonably conclude that the State's questions solicited disclosure of the fact that the relationship took place on Facebook when no inquiry was made as to the method or medium of their limited communication and socialization. Accordingly, there was no clear question which unequivocally triggered Rolfes' duty to disclose his Facebook relationship with Mother, and the record does not support that a nondisclosure actually occurred. The trial court did not abuse its discretion in denying Hill's motion for new trial based on juror misconduct. Point denied.

## III.  CONCLUSION

The judgment convicting Hill of two counts of first-degree statutory rape, one count of second-degree statutory rape, three counts of first-degree statutory sodomy, one count of second-degree statutory sodomy, and one count of first-degree child molestation is affirmed.

CLIFFORD H. AHRENS, P.J. and SHERRI B. SULLIVAN, J., concur.