

# In the
# Missouri Court of Appeals
## Western District

| | | |
|---|---|---|
| TYJUAN CALDWELL, | ) | |
| | ) | |
| Appellant, | ) | **WD85729** |
| | ) | |
| V. | ) | **OPINION FILED:** |
| | ) | **MARCH 26, 2024** |
| STATE OF MISSOURI, | ) | |
| | ) | |
| Respondent. | ) | |

**Appeal from the Circuit Court of Jackson County, Missouri**
The Honorable S. Margene Burnett, Judge

Before Division One:  Alok Ahuja, Presiding Judge, Cynthia L. Martin, Judge and
Thomas N. Chapman, Judge

Tyjuan Caldwell ("Caldwell") appeals from a judgment denying his amended Rule 29.15[1] motion for postconviction relief.  Caldwell argues that the motion court clearly erred in denying claims that trial counsel was ineffective by failing to adduce testimony that Caldwell believed an individual at the scene of his crimes had a gun, and that he was prejudiced because the evidence would have supported self-defense and defense-of-others instructions.  Finding no error, we affirm.

## Factual and Procedural Background

---

[1] All rule references are to *Missouri Court Rules, Volume 1 -- State, 2021* (the rules in effect when Caldwell filed his *pro se* motion for post-conviction relief) unless otherwise noted.

Caldwell was convicted of second-degree felony murder, unlawful use of a weapon, and two counts of armed criminal action. Caldwell shot and killed the mother of another individual, D.C. The murdered woman was an unintended target as Caldwell was actually shooting at D.C. The murder occurred following physical altercations between members of two families that originated over a disagreement about money D.C. gave Caldwell a week or two earlier. The details of the physical altercations are not material to resolving the issues presented in this appeal but are explained in the opinion that affirmed Caldwell's convictions on direct appeal. *State v. Caldwell*, 655 S.W.3d 374 (Mo. App. W.D. 2021).

At his trial, Caldwell did not contest that he fired the shot that killed D.C.'s mother. However, he was permitted to submit a defense-of-others instruction with respect of his younger brother whom D.C. had punched in the face during the altercations. The defense-of-others instruction was submitted in connection with the unlawful use of a weapon charge. Caldwell also sought, but was refused, a defense-of-others instruction with respect of his mother.

Despite the submitted defense, Caldwell was convicted of unlawful use of a weapon. In his direct appeal, appellate counsel claimed error in the trial court's refusal of the defense-of-others instruction related to Caldwell's mother. We held that the "circumstances of the shooting, viewed in the light most favorable to Caldwell, do not present 'substantial evidence' supporting a defense-of-others instruction" as to Caldwell's mother. *Id.* at 379.

Caldwell filed a Rule 29.15 motion on November 18, 2021, which was replaced following the appointment of counsel with a timely filed amended Rule 29.15 motion ("Amended Motion"). The Amended Motion alleged four claims three of which involved trial counsel's alleged ineffectiveness in failing to elicit testimony from Caldwell that he believed D.C. had a gun at the time Caldwell fired his own gun. The fourth claim alleged ineffective assistance of counsel in failing to request a self-defense instruction based on the evidence actually presented at trial.

Following an evidentiary hearing where Caldwell and his trial counsel testified, the motion court denied all of the claims in the Amended Motion. With respect to the claim that trial counsel should have requested a self-defense instruction, the motion court found that trial counsel was not ineffective because there was no substantial evidence to support a self-defense instruction. With respect to the three claims that alleged trial counsel was ineffective for failing to elicit testimony from Caldwell that he believed D.C. had a gun at the time he fired his own gun, the motion court found that trial counsel's performance was not deficient because she asked Caldwell several non-leading questions about why he used deadly force which would have permitted Caldwell to testify that he believed D.C. had a gun, if that were in fact the truth, but Caldwell did not do so. The motion court also found that it was a reasonable trial strategy to limit attempts to elicit testimony from Caldwell to the use of non-leading questions. In addition, the motion court further found that Caldwell was not prejudiced because even had Caldwell testified that he thought D.C. had a gun there still would have been no substantial evidence to support submission of additional defense-of-others or self-defense instructions because

3

D.C. "was two and a half houses away from [Caldwell] when [Caldwell] [first] fired the weapon" and was unarmed.

The motion court entered its judgment which included findings of fact and conclusions of law on August 29, 2022 ("Judgment"). Caldwell filed this timely appeal.

**Standard of Review**

We review a motion court's denial of post-conviction relief to determine whether the motion court's findings of fact and conclusions of law are clearly erroneous. Rule 29.15(k). "A judgment is clearly erroneous when, in light of the entire record, the court is left with the definite and firm impression that a mistake has been made." *Swallow v. State*, 398 S.W.3d 1, 3 (Mo. banc 2013) (citation omitted). We presume that the motion court's findings are correct. *Johnson v. State*, 406 S.W.3d 892, 898 (Mo. banc 2013) (citation omitted). We defer to "the motion court's superior opportunity to judge the credibility of witnesses." *Barton v. State*, 432 S.W.3d 741, 760 (Mo. banc 2014) (quotation omitted).

To establish a right to post-conviction relief based on a claim of ineffective assistance of counsel, a movant must demonstrate by a preponderance of the evidence that: "(1) trial counsel failed to exercise the level of skill and diligence reasonably competent trial counsel would in a similar situation, and (2) he was prejudiced by that failure." *Shockley v. State*, 579 S.W.3d 881, 892 (Mo. banc 2019) (citing *Strickland v. Washington,* 466 U.S. 668, 687 (1984)). To overcome the strong presumption that trial counsel's conduct was reasonable and effective, "a movant must identify 'specific acts or omissions of counsel that, in light of all the circumstances, fell outside the wide range of

4

professional competent assistance.'" *Id.* (quoting *Zink v. State*, 278 S.W.3d 170, 176 (Mo. banc 2009)). "Trial strategy decisions may be a basis for finding ineffective assistance of counsel only if that decision was unreasonable." *Id.* (citing *Zink*, 278 S.W.3d at 176). To establish *Strickland* prejudice, a movant must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* (quoting *Deck v. State*, 68 S.W.3d 418, 429 (Mo. banc 2002)).

Because a movant must establish both the performance and prejudice prongs of the *Strickland* test to prevail on a post-conviction claim of ineffective assistance of counsel, a movant's failure to sustain his burden to establish either prong of the test renders it unnecessary to discuss the remaining prong. *Taylor v. State*, 382 S.W.3d 78, 81 (Mo. banc 2012) (citing *Strickland*, 466 U.S. at 697) (holding that an appellate court need not "address both [*Strickland*] prongs if the movant has failed to make a sufficient showing on one").

### Analysis

Caldwell raises three points on appeal each addressing one of the claims raised in the Amended Motion involving trial counsel's alleged deficient performance in failing to elicit testimony from Caldwell that he believed D.C. had a gun when Caldwell first fired his own gun.[2] All three points also urge that counsel's deficient performance was

---

[2]Caldwell has not appealed the motion court's denial of his claim that based on the evidence that was submitted at trial, trial counsel should have requested the submission of a self-defense instruction. That claim has thus been abandoned.

5

prejudicial because testimony from Caldwell that he believed D.C. had a gun would have supported the submission of a defense-of-others instruction relating to Caldwell's mother and a self-defense instruction. The success of all three points depends first on whether Caldwell has sustained his burden to establish that trial counsel's failure to elicit testimony from Caldwell that he believed D.C. had a gun constituted deficient performance. As a result, we address the points collectively.

Caldwell's trial counsel testified during the hearing on the Amended Motion that in her pre-trial discussions with Caldwell he never once told her that he believed D.C. had a gun on his person when Caldwell first fired his weapon. She also testified that Caldwell was clear in his conversations that he did not see D.C. with a gun at all on the day of the altercations that led to the death of D.C.'s mother. However, trial counsel testified that Caldwell did tell her that D.C. usually had a weapon. And she testified that Caldwell told her he was concerned that D.C. had a gun in his car on the day of the altercations. Trial counsel also testified that Caldwell told her that text messages exchanged with D.C. earlier in the day, before the physical altercations began, were interpreted by Caldwell as threatening. Finally, she testified that Caldwell told her that he interpreted D.C.'s statement during a break in the physical altercations that "I've got something for y'all. I'll be back," to mean he would be returning with a gun.

Trial counsel testified that based on this information from Caldwell her general strategy at trial was to show that Caldwell did not act with the intent to harm anyone and that he was worried about protecting his family from D.C., in particular his brother and mother. As a result, when Caldwell took the stand to testify she wanted him to explain

6

his decision to use deadly force during the altercation. She asked Caldwell several opened-ended questions that she anticipated would elicit the same information Caldwell had provided her prior to trial. Trial counsel testified, however, that when she started asking Caldwell questions about what happened he began backtracking. For example, trial counsel testified that when she asked Caldwell about the texts exchanged with D.C. before the altercations he expressed the view that D.C. was trying to help him and never testified that he perceived the texts as threatening. She testified that on as many as five occasions she asked Caldwell why he felt the need to use deadly force and that on each occasion he failed to say anything about D.C. having a gun or about being worried that D.C. might have a gun. Trial counsel testified that when she asked Caldwell about D.C.'s statement that suggested he "had something for you," Caldwell responded that "I never gave that any mind" or words to that effect.

Trial counsel explained that her client's repeated failure in response to her open-ended questions to provide testimony that would have furthered the defense strategy that Caldwell did not intend to harm anyone and was only protecting his mother and brother forced her to abandon the open-ended questioning of Caldwell. Trial counsel further testified that she made the strategic decision at trial not to ask Caldwell leading suggestive questions about whether he believed D.C. had a gun because she was concerned about what his answer would be in light of his other trial testimony. Trial counsel also testified that she was concerned leading questions suggesting an answer would have drawn successful objections from the State.

The motion court credited trial counsel's testimony and found that trial counsel "handled the direct examination of [Caldwell] in an appropriate and professional way: she asked him non-leading questions to explain why he used deadly force, leaving the door open for him to explain that he was afraid of a firearm if that were in fact the truth." On appeal, Caldwell does not challenge this finding and concedes that he did not offer the information he had shared with his trial counsel in response to open-ended questions asked of him during trial. Caldwell's concession is fatal to his claim that trial counsel was ineffective for failing to attempt to elicit testimony from him at trial that he believed D.C. had a gun.

Caldwell argues, however, that even though he did not testify as trial counsel expected him to in response to open-ended questions it was objectively unreasonable for trial counsel to make the strategic decision not to ask Caldwell leading questions about whether he believed D.C. had a gun. Caldwell argues that any risk of asking leading questions without knowing what Caldwell's response would be was outweighed by the unreasonable abandonment of trial counsel's defense strategy to show that Caldwell was not intending to hurt anyone and was only intending to protect members of his family.

The motion court found to the contrary and concluded "that trial counsel's fear that [Caldwell] would backtrack or give an unfavorable answer to such a question was well-founded, given [Caldwell's] trial testimony and his testimony at the PCR hearing." The motion court was referring to the fact that during the hearing on the Amended Motion, Caldwell was "equivocal on whether he believed, on the day of the shooting, that [D.C.] had a gun." Caldwell does not challenge this factual finding on appeal. To the contrary,

8

Caldwell acknowledged in his hearing testimony that he never told detectives that he had to shoot because he believed D.C. had a gun. And Caldwell admitted during his hearing testimony that he never told trial counsel that he believed D.C. had a gun on the day of the shooting, and that he only told trial counsel he believed D.C. was generally armed. In the absence of any evidence that Caldwell would have answered "yes" had trial counsel asked him leading questions about whether he believed D.C. had a gun, we cannot find that trial counsel's strategic decision to avoid leading questions constituted deficient performance.

That conclusion is particularly appropriate in light of the fact that Caldwell fails to address trial counsel's alternative and well-grounded concern that leading questions suggesting Caldwell's belief that D.C. had a gun would have drawn successful objections from the State. *State v. McFadden*, 391 S.W.3d 408, 431 (Mo. banc 2013) (citation omitted) (holding that during direct examination, "[l]eading questions are generally impermissible because they suggest the desired answer to the witness"). Trial counsel was also concerned that even had Caldwell testified at trial in response to leading questions that he believed D.C. had a gun on the day of the shooting, he would then have been subject to damaging impeachment given his failure to contemporaneously report this belief to detectives investigating the shooting.

Caldwell has not sustained his burden to establish by a preponderance of the evidence that trial counsel was ineffective in failing to elicit testimony from him at trial that he believed D.C. had a gun when he shot his own gun. Because Caldwell has not

sustained his burden with respect to *Strickland's* performance prong, we need not address his claim of *Strickland* prejudice. *Taylor*, 382 S.W.3d at 81.

Caldwell's first, second, and third points on appeal are denied.

## Conclusion

The trial court's Judgment is affirmed.

_____
Cynthia L. Martin, Judge

All concur

10